**\*\*FILE UNDER SEAL\*\***

**\*\*UNREDACTED\*\***

**EEOC CHARGE**

**DATED 10/03/16**



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Thank you for using the EEOC Assessment System. The information you gave us indicates that your situation may be covered by the laws we enforce. If you want to file a charge, you can start the process by filling out the Intake Questionnaire, signing it, and either bringing it or mailing it to the EEOC office listed below right away. If you live within 50 miles of the EEOC office listed below, we recommend that you bring the completed questionnaire with you to this office to discuss your situation.

EEOC New York District Office
33 Whitehall Street
5th Floor
New York, NY 10004

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
NEW YORK DISTRICT OFFICE
OCT 0 3 2016
DATE RECEIVED

If you would like to bring the questionnaire to us in person instead of mailing it to us, please click http://www.eeoc.gov/field/index.cfm to find out the office hours of the EEOC office closest to you. If you would like to fax the questionnaire to us, please click http://www.eeoc.gov/field/index.cfm to find out the fax number of the office nearest to you.

You should be aware that filing a charge can take up to two hours. If you find that you are having difficulty completing the questionnaire on your own, you may call the number below for assistance.

Please be sure to:

- Answer all questions as completely as possible.
- Include the location where you work(ed) or applied.
- Complete all pages and sign the last page.
- Attach additional pages if you need more space to complete your responses.

You can find out more information about the laws we enforce and our charge-filing procedures on our website at www.eeoc.gov.

If you want to file a charge about job discrimination, there are time limits to file the charge. In many States that limit is 300 days from the date you knew about the harm or negative job action, but in other States it is 180 days. To protect your rights, it is important that you fill out the questionnaire, sign it, and bring it or send it to us right away.

**Filling out and bringing us or sending us this questionnaire does not mean that you have filed a charge.** This questionnaire will help us look at your situation and figure out if you are covered by the laws we enforce. If you live within 50 miles of the office listed above, we recommend that you bring the completed questionnaire to us to discuss your situation. If you mail the completed questionnaire to us, someone from the EEOC should contact you by mail or by phone within 30 days. If you don't hear from us in 30 days, please call us at **1-800-669-4000**.

Sincerely,

U.S. Equal Employment Opportunity Commission

Phone: 1-800-669-4000    TTY: 1-800-669-6820    Internet: www.eeoc.gov    Email: info@eeoc.gov



# EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. Answer all questions as completely as possible, and attach additional pages if needed to complete your response(s). If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a." Please Print.

1. **Personal Information**

Last Name: Brenda    First Name: Canada    MI: E
Street or Mailing Address: 1920 McGraw Avenue    Apt Or Unit #: 1F
City: Bronx    County: Bronx    State: NY    ZIP: 10462
Phone Numbers: Home: (253) 951-5336    Work: ( ) Unemployed
Cell: (253) 951-5336    Email Address: bcanada2000@aol.com
Date of Birth: 05/07/1963    Sex: Male ☐ Female ☒    Do You Have a Disability? ☐ Yes ☒ No

Please answer each of the next three questions.  i. Are you Hispanic or Latino? ☐ Yes ☒ No
ii. What is your Race? Please choose all that apply.    ☐ American Indian or Alaska Native    ☐ Asian    ☐ White
☒ Black or African American    ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? USA

Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:
Name: Micael Jimenez    Relationship: Son
Address: 1430 Parkchester Rd., #6E    City: Bronx    State: NY    Zip Code: 10462
Home Phone: (718) 928-4523    Other Phone: (212) 847-3405

2. I believe that I was discriminated against by the following organization(s): (Check those that apply)
☒ Employer    ☐ Union    ☐ Employment Agency    ☐ Other (Please Specify) _____

Organization Contact Information (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**

Organization Name: Perkins Coie LLP
Address: 1201 Third Avenue, Suite 4900    County: King
City: Seattle    State: WA    Zip: 98101    Phone: (206) 359-8000
Type of Business: International Law Firm    Job Location if different from Org. Address: 30 Rockefeller Plaza, Ste. 2200, NY
Human Resources Director or Owner Name: Darrin Emerick, DEmerick@perkinscoie.com    Phone: (206) 359-8000
Number of Employees in the Organization at All Locations: Please Check (√) One
☐ Fewer Than 15    ☐ 15 - 100    ☐ 101 - 200    ☐ 201 - 500    ☒ More than 500

3. Your Employment Data (Complete as many items as you can)    Are you a Federal Employee? ☐ Yes ☒ No
Date Hired: 03/16/2000 & 10/30/2006    Job Title At Hire: Legal Secretary
Pay Rate When Hired: Not Known    Last or Current Pay Rate: $45/hr or 82,625/yr
Job Title at Time of Alleged Discrimination: Legal Secretary    Date Quit/Discharged: April 28, 2016
Name and Title of Immediate Supervisor: Cynthia Lopez, Office Administrator

If Job Applicant, Date You Applied for Job  N/A          Job Title Applied For  N/A

4. **What is the reason (basis) for your claim of employment discrimination?**
FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.

☒ Race   ☐ Sex   ☒ Age   ☐ Disability   ☐ National Origin   ☐ Religion   ☒ Retaliation   ☐ Pregnancy   ☐ Color (typically a difference in skin shade within the same race)   ☐ Genetic Information; choose which type(s) of genetic information is involved:

☐ i. genetic testing   ☐ ii. family medical history   ☐ iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: _____

If you checked genetic information, how did the employer obtain the genetic information? _____

Other reason (basis) for discrimination (Explain). Constructive Discharge/Forced to Resign

5. **What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed.
(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)

A) Date: 03/23/2015 & 4/21/2016  Action: Corrective Action Plan / Final Written Warning

Name and Title of Person(s) Responsible: Cynthia Lopez, Office Administrator-still in training / Lori Rulapaugh, Office Administrator

B) Date: 04/28/2016  Action: Constructively discharged by Cynthia Lopez, Lori Rulapaugh, and Charles E. Torres

Name and Title of Person(s) Responsible: Office Administrators (see above) / Partner

6. **Why do you believe these actions were discriminatory?** Please attach additional pages if needed.
I realize the 3/23/2015 CAP is in the past. However, it plays a vital part in Cynthia/Lori's future actions as they are both extremely culpable and have a propensity for bullying and they use their positions of power to do so as you will see in the attached. Charles E. Torres' arrival was a very big deal/huge investment for the firm, but I did not realize I would be subjected to his big ego, harassing/bullish behavior, and dissatisfied clients/colleagues on the other end of the phone. Once revealed, I was constructively discharged.

7. **What reason(s) were given to you for the acts you consider discriminatory?  By whom?  His or Her Job Title?**
On 4/28, Lori says, "You were provided with a corrective action plan. You were provided with a final written warning and errors are still continuing. So, we talked with Darrin Emerick and Judy Cordell and their recommendation is to go ahead and terminate the position because you're not meeting the standards." In terms of Charles Torres and his behavior towards me, I had to stand up to him on 4/12, Cynthia helped seal my fate when she gave him a pass to bypass me and go to her instead of yelling at me, he gladly acceptd

8. **Describe who was in the same or similar situation as you and how they were treated.** For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Patti Bliss | White, Female, 50s | Legal Secretary |

Description of Treatment  While partner Chris Gavin was upset at the fact that Patti did not know how to compare documents/version up, she still has her job and was not written up like me.

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Jonathan Parsons | White, Male, 53 | Legal Secretary |

Description of Treatment  While Jonathan's issues with Partner Chris Gavin were dismissed by management and he was assigned to me until Patti came, he too was never written up or told he was being combative like me.

EEOC Form, Question 8 Cont.

Of the persons in the same or similar situation as you, who was treated *better* than you?

- A. Full Name: Tina Carbone & Addtl. Comments Re: Jonathan Parsons
- B. Race, sex, age, national origin, religion or disability Job Title Race, sex, age, national origin, religion or disability: White, Female, 65, USA
- C. Title: Legal Secretary

Description of Treatment: Tina is a typical "protected" partner secretary who never meets all expectations of the position without someone else's help. When she worked for Ann Baker, I recall that working for Ann was quite the challenge for Tina because Ann is a litigator. Ann would give Tina simple tasks in PowerPoint like printing one slide, delete one slide, and add in another. One day, she ran to me and said she did not know how to perform these tasks and if I don't mind helping her if I know PowerPoint. I agreed to help her because I do know PowerPoint. Although, while working for Charles, I told him that I know how to use PowerPoint, but he still by-passed me and gave it to Jonathan. I've never experienced that before. So I help Tina and attempted to teach her the basics to get the job done that she was asked to do. Tina didn't know anything about PowerPoint and when I sat next to her, she also did not know anything about Patents, but was assigned a Patent Partner, Sean Greygiel. For the entire time I sat next to Tina, I trained her on many patent functions and was able to answer the questions she had. Before I left, Sean Greygiel moved off her desk and she was given Jeff Vanacore, who is a litigator. Again, a practice group she knows very little about.

Tina was afforded the opportunity to learn how to work in PowerPoint, learn about patents, and litigation and not suffer backlash. She also never suffered backlash when she never took initiative to assist her partner, John Squires, in getting the executed engagement letters back from clients before anyone began legal work. Timekeepers lost billable time behind working on some of his cases and found they could not release their time because the executed engagement letters were never received. While she understood the disparity others were going through, she never reached out to John to say, "How can I help you with this process?" Now I, on the other hand, did help my ECVC Partner, Charles Torres with this task and when I mentioned it to Tina once, she was in shock that I would be taking on emailing engagement letters to clients and following up to get them back without my Partner's help. Funny how with all I did do, I was still told by Cynthia/Lori that I need to be more proactive in assisting my timekeepers because they are doing things themselves that I should be offering to help them do. Really?

Bottom line, the three senior secretaries I mention are well protected by their partners in many different ways. Jonathan has the biggest protection of all as he worked for the first managing partner and now the second. I had been asking Simone Allen to work on opening up new matters for me and sought help with a marketing list project. She sat close to me on floor 22, so it was perfect. But, after I was written up I was told by Cynthia to not ask her for assistance anymore, but to ask Jonathan because Simone is not flexible and how he knows how to do everything *(as opposed to me or Simone knowing how to do everything. It begs the question of what exactly is "everything" in Cynthia's mind?)* and he can just come right in and you won't even have to train him much. I tried one more time to see if I could still ask Simone for assistance, but Cynthia continued to convince me of just how bright

and helpful he really is and how he helped her recently with two projects a partner had and he is also in need of work right now. *(oh really now, Simone was also in need of work)* As I understand it, Jonathan, because he works for the managing partner actually flexes his power by thinking he runs the place by doing things like not attending secretary meetings or functions at all and getting into big, not small, spats with other Partners and attorneys and quick to tell others what he's not going to do. I ended up receiving one of those Partners who experienced Jonathan's wrath. Once I sat down to take a look at everything, I receive this call from the accounting manager in Seattle who wonders who I am. I let her know that I will be working for Chris Gavin for about two weeks because his previous pairing did not work out and I used to work in the home office and have been with the firm for 16 years, so I should be able to rectify any problem. She then goes on to tell me that's great and says that she really hopes I can help her to resolve a real problem they've been having. She said all we were trying to get Jonathan to do is create child matters for one of Chris' clients so we can bill them under those child matter designations. Please take note above that this pairing did not work out. However, I highly doubt that Jonathan was written up or yelled at by Cynthia where she gave him suggestions of what he could do.

While not being quite set up yet, I did have the client/matter list, so I asked her which client it was and from there, that task was so incredibly easy, but the manager said Jonathan would not handle it and so it had been well over a month and the client can't be billed yet until the child matters are created. Once created, the client was billed.

I asked myself at that moment, why on earth did this take over a month to accomplish to provide Total Client Service to Chris' client? I was left to only surmise that it is definitely because of bias in the workplace as Jonathan is the "star" player and so therefore, he gets a very big pass and probably should have been written up for this and told he was combative, but I highly doubt it. Had this been me, I would have surely been written up or called to Cynthia's office to get yelled at and told how I'm being combative.

At the end of it all, my blood pressure was at 150/105 (see attached) when I visited my doctor a few days after leaving Perkins Coie LLP. If the firm no longer wanted me to work for the ECVC group, they could have given me back my patent people (I asked, but was ignored by Cynthia/Lori) or at least allowed me to find another job inside the firm. Especially since it took them as long as I have been gone to replace my position. I frequently saw the job posting on the job search engines and saw last week that it was no longer posted. I remain unemployed as of today.

Continuation of my claim

It's important to note that team players come in many forms as my two managers Cynthia and Lori never seemed to appreciate in me until directly after they wrote me up on March 23, 2015. After this write-up, my email to Lori expressing my concerns regarding my new pairing, Jeff Vanacore, the two of them had to quickly do an about face and learn something about what Total Client Service means, which is something I lived by everyday as I learned this in the Home Office prior to transferring to the NY office. I was hopeful that many of the things like bias being created with Cynthia gossiping and getting too close to certain employees she manages and her close relationship with Lori would have ended. However, it continued to the point where even though I was told by Cynthia in my review that she's asking all secretaries who are not on the rotating schedule to cover reception when they have time, while I attended my last "all staff" meeting, which included at least 20 of us, I was put on the spot in this meeting by both Tina Carbone and Millie Garcia who both looked directly at me and Millie says, "Right before Christmas, it would have been nice if everyone could have pitched in to cover reception considering that Dennis was in the office, so I had to work for him all day." She goes on to say how he had a filing... Cynthia interrupts her and says, "Yeah I know." Millie then says, "You knew?" Cynthia says, "Yes because he told me." Millie then looks in wonder... The problem here is that neither one of them told me help was needed or sent out an email to the team asking for the help they needed, which is the procedure.

Cynthia allowed this until Lori looked at her for not saying anything, then Cynthia finally says, "But we have hired a new hospitality person who should be starting on [blank] day, so no one will have to worry any longer about coverage because the new person has been hired to cover reception when coverage is needed." If the shoe were on the other foot, I would never do such a thing to one of my co-workers in front of a room full of people. But, due to Cynthia's bias relationship with Millie (Tina/Millie are star players), they both feel the same about what they think I should be doing. If Cynthia did not foster this type of environment, thinking it is okay to bully one employee, this would never have happened and I would never have spent a lot of time proving that while I was too busy and the work I did for my Associate can't be done at the reception desk, I still managed to cover reception one day and help my team in many other ways by making coffee in the pantry whenever Tina Carbone was out because she did it daily unless out and helping Operations/Facilities with their kitchen duties regularly (i.e., cleaning counters, changing paper towels, notifying them when I see items were low). I also contributed a great deal of knowledge to the entire office by providing all staff with my years of litigation prep documents and not to mention sharing with partners in the home office the need for the home office to assist the satellite offices more than they had been in the past.

To add insult to injury with these two friends, Lori sends out her email to ask staff for comments about Cynthia, I email her a few things of concern that are coaching opportunities. She decides to schedule meetings with all staff. Then, when Cynthia returns from DC, she retaliates and or harasses me, "walks by my desk in the evening with Abdon and stands next to me after walking past me and says loudly, "I guess we should call Dennis to help us with the binding!" She startled me, so I turn to her, and say, "What are you talking about?" She turns in disgust and

walks away, so I go back to what I was typing. I chose not to tell Lori because my confidentiality was clearly broken, thus there is no trust. After that, she walks by my desk with Dennis' secretary (Millie), as they are walking by, she turns and looks my way and says, "Dennis, Dennis" as they both giggle about it like school girls. She continued this by mentioning Dennis again in my review on July 10th. How petty and incredibly unprofessional of the two of them for what I said to Lori, which is what many other staff said to Lori, but I was attacked by Cynthia. You think you have confidentiality, but oh no… This is why when next year's question was asked of staff, no one feels confident that Lori can be impartial and keep comments confidential.

Ultimately, due to the bias nature of Cynthia/Lori's personal relationship (i.e., Facebook pictures of the two of them enjoying a baseball game, Lori staying at Cynthia's place, Cynthia walking around the office telling staff how she is going to take Lori out and how she needs to buy her a gift for her birthday, my witnessing Lori give Tina a birthday gift and saying, "you do so much, I just wanted to buy you a gift for your birthday"); All I can say is… manager/subordinate relationships often will create a perception of favoritism. Even if you think you're being 100% fair and un-biased, you'll always be subject to being second guessed. Also, you may not even realize it, but other employees are probably letting your "friends" get away with more, thinking that you're going to protect them or side with them. Lastly, if you allow yourself to get emotionally attached to one employee – for whatever reason – but not another, those emotions will consciously or unconsciously influence decisions around raises, layoffs, terminations, assignments, promotions, etc..... Thus, again I say, "... *they are both extremely culpable and have a propensity for bullying and they use their positions of power to do so....*"

While going through this termination process, I experienced both Cynthia/Lori appear very happy when they were writing me up the second time for what they claimed is me continuing to not be a team player even with my ECVC Group. They both deemed me to be behind in scheduling and claimed I was so unorganized, thus I needed to have that *CET Schedule shoved down my throat. This could not be further from the truth. I caught up with scheduling very quickly after sending some 1,000+ emails out to clients/acquaintances to notify them about Charles' arrival, so I should never have been written up and be made final because I was not behind or unorganized after that second week of Charles' arrival, so how could I be behind on 4/21? This question stunned both Cynthia/Lori. Lori turns and gazes at Cynthia for an explanation. Cynthia then says while voice shaking, "we thought you were behind in scheduling!" I say, no I'm not behind!" Cynthia says, "well why are you working so much overtime?" I say, "because remember I am now working for seven people, one of which (Agatha) I still do specialized work for so I can't give it to anyone else so I work on the weekends for that until she is gone and I had reimbursements to do for Nakia and I am also working on Agatha/Paul's pro bono case. The only time I stay after hours is when Charles speaks to a ton of people that day. I then catch up on that day's scheduling because if I don't, I will have a lot more first thing in the morning."

I did not share this scheduler because I no longer needed it. This was a scheduler I asked for simply to separate scheduling emails from my general email box because at the time, I worried

that this initial scheduling experience (at least over 50 people asking for time to speak with Charles) would be my future experience working for this group. However, once I was caught up and verified with Charles whether I could expect such extreme scheduling requests, I re-thought it and realized that using it would only cause problems for us all if my attorneys forget and use both. Thus, why I never bothered them with it because they are too busy to be bothered. It came about when Charles and I were in a conversation about heavy scheduling and he just happened to tell me what another attorney had to do at his prior firm, so I thought I would just ask Cynthia if that was something I could do. Now of course if I had a forethought this "scheduler" would be used against me, I never would have asked for it and especially asked Cynthia. I see I should have simply asked Service Desk because later it was improperly used against me. As I said, I was not behind. On 4/21, I was written up on the premise of Cynthia/Lori thinking that I would move faster to catch up on scheduling if my job were on the line. With the end result being that I was let go, it does not appear Cynthia/Lori corrected this understanding with Darrin/Judy… Lastly, I say again… *"… they are both extremely culpable and have a propensity for bullying and they use their positions of power to do so…."*

Canada, Brenda ▮▮▮▮ DOB: 05/07/1963

**Brenda Canada**
5/5/2016 11:40 AM   Office Visit

Description: **52 year old female**
Provider: ▮▮▮▮
Department: **Primary Care Medicine**

## Vital Signs

| BP | Temp(Src) | Height | Weight |
|---|---|---|---|
| (!)150/105 mmHg | 98 °F (36.7 °C) (Oral) | 5' 0.63" (1.54 m) | ▮▮▮▮ |

## Follow-up Instructions

▮▮▮▮

## Visit Disposition

Disposition
▮▮▮▮

## Instructions

▮▮▮▮

List of Secretary/Partner Pairings

1. Patti Bliss (White)
    a. Ann Schofield Baker (White)
    b. Brian J. Eiting (White)

2. Tina Carbone (White)
    a. John Squires (White) He was fired

3. Millie Garcia (Cuban)
    a. Manny Joseph Caixeiro (White)
    b. Sean J. Grygiel (White)
    c. Dennis Hopkins (Black)

4. Jonathan Parsons (White)
    a. Schuyler G. Carroll (White)
    b. Keith Miller (White)

5. Joanna Rivera (Hispanic)
    a. Sean Connery (White)
    b. Tina N. Moss (White)
    c. Ronald T. Sarubbi (White)

6. Diana Torres (Puerto Rican)
    a. Gary F. Eisenberg (White)
    b. Richard Ross (Black)

7. Noreen (White)
    a. Gene W. Lee (Asian)
    b. William McCabe (White)

8. New ECVC Secretary (Unknown)
    a. Charles E. Torres (Puerto Rican)

9. New Investments Secretary (Unknown)
    a. Alexandra Kambouris Alberstadt (Greek)
    b. Carl Frischling (German)
    c. Aviva L. Grossman (White)
    d. Mark F. Parise (Italian)

10. Simone Allen (Jamaican)
    a. She no longer has a partner

Of the persons in the same or similar situation as you, who was treated *worse* than you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| Brenda E. Canada | Black, Female, 53 | Legal Secretary |

Description of Treatment  I was treated worse, not any of the people listed on page 2 and on the attached for question 8.

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| N/A | N/A | N/A |

Description of Treatment  N/A

Of the persons in the same or similar situation as you, who was treated the *same* as you?

| A. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| N/A | N/A | N/A |

Description of Treatment  N/A

| B. Full Name | Race, sex, age, national origin, religion or disability | Job Title |
|---|---|---|
| N/A | N/A | N/A |

Description of Treatment  N/A

Answer questions 9-12 only if you are claiming discrimination based on disability. If not, skip to question 13. Please tell us if you have more than one disability. Please add additional pages if needed.

9. Please check all that apply:
   - ☐ Yes, I have a disability
   - ☐ I do not have a disability now but I did have one
   - ☐ No disability but the organization treats me as if I am disabled

10. What is the disability that you believe is the reason for the adverse action taken against you?  Does this disability prevent or limit you from doing anything? (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

11. Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?

   Yes ☐   No ☐

   If "Yes," what medication, medical equipment or other assistance do you use?

12. Did you ask your employer for any changes or assistance to do your job because of your disability?

   Yes ☐   No ☐

   If "YES", when did you ask? _____   How did you ask (verbally or in writing)? _____

   Who did you ask? (Provide full name and job title of person)

   Describe the changes or assistance that you asked for:

   How did your employer respond to your request?

4

13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| A. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| Taryn Bollers | Patent Paralegal | Perkins Coie LLP<br>30 Rockefeller Plaza, Ste. 2200, (212) 262-6900 |

What do you believe this person will tell us?
She witnessed the incident on 4/8. She will tell you what she observed.

| B. Full Name | Job Title | Address & Phone Number |
|---|---|---|
| Simone Allen | Legal Secretary | Perkins Coie LLP<br>30 Rockefeller Plaza, Ste. 2200, (212) 262-6900 |

What do you believe this person will tell us?
She witnessed the incidents on 4/7 and 4/8. She will tell you what she observed.

14. Have you filed a charge previously in this matter with EEOC or another agency?   Yes ☐   No ☒

15. If you have filed a complaint with another agency, provide name of agency and date of filing:
N/A

16. Have you sought help about this situation from a union, an attorney, or any other source?   Yes ☐   No ☒
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
N/A

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. **If you do not file a charge of discrimination within the time limits, you will lose your rights.** If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

Box 1   ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

Box 2   ☒ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

*Brenda C. Canada*                                    October 3, 2016
Signature                                                          Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1. FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08).
2. AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a), 42 USC §2000ff-6.
3. PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge.
4. ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters
5. WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing of this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>520-2017-00017 |
|---|---|---|

New York State Division Of Human Rights                                  and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Brenda Canada | (253) 951-5336 | 1963 |

Street Address: 1920 McGraw Avenue, Apt. 1-F, Bronx, NY 10462

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| PERKINS COIE LLP | 500 or More | (206) 359-8000 |

Street Address: 1201 3rd Avenue, Suite 4900, Seattle, WA 98101

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☒ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | Earliest: 03-23-2015   Latest: 04-28-2016 |
| ☒ RETALIATION  ☒ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION | ☐ CONTINUING ACTION |
| ☒ OTHER (Specify) Harassment | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See attached Charge Particulars.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: 4/12/17   Charging Party Signature: Brenda E. Canada

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

## Charge Particulars
### Brenda Canada v. Perkin Coie, 520-2017-00017

I allege that Respondent discriminated against me in connection to my race (African American) and age (53), in violation of Title VII and the ADEA, as amended. I was employed with Respondent as a Legal Secretary from March 16, 2000 to August 2006, then from October 30, 2006 to April 28, 2016.

During March 2015 to April 2016, I worked very well with the following attorneys, Agatha Liu, Esq., Chris Gavin, Esq., Michael Smith, Senior Patent Agent, Sameer Pai, Senior Patent Agent, Nakia Humphrey, Attorney Development Manager, and Taryn Bollers, Paralegal.

I allege Respondent discriminated against me by allowing its Office Administrators, Cynthia Lopez (age 42) and Lori Rulapaugh (age 47) to disparately discipline me for performance reasons, in connection to my race and age. The Office Administrators did not monitor, scrutinize, counsel or discipline younger non-black secretaries that were similarly situated to me. The difference in treatment included, but was not limited to reprimands, final warnings, like a Performance Correction Action Plan. The secretaries treated more favorable than me are Patti Bliss, Millie Garcia, Jonathan Parsons, Joanna Rivera, Diana Torres, and Tina Carbone. Examples of the disparate treatment includes, but is not limited to the following:

1. Tina Carbone, (white secretary) was offered the opportunity to work with PowerPoint, learn about patents and litigation and was not scrutinized for what she did not know, her learning curve or the additional training she needed. Her lack of initiative to assist her partner, John Squires, was also overlooked and she was not reprimanded. On the other hand, documentary evidence will show that I actively offered to assist my partners. Despite my initiative to help my partners, I was still reprimanded by Ms. Lopez and Ms. Rulapaugh. For example, I was told that I needed to be more proactive in assisting my partners, because they were carrying out administrative tasks (like scheduling and copying). Both Administrators ignored the possibility that if the attorney was scheduling and copying, it did not infer I was not performing or assisting them. They also discarded the likelihood that if I was away from my desk performing a task that it was for the attorney or at the attorney's request.

2. Another example of preferential treatment was with Jonathan Parsons, a younger white male legal secretary. Jonathan Parsons took over a month to perform a task that does not take more than an hour, when he was assigned to provide total Client Services to a client and the assigned attorney. Mr. Parsons' performance deficiency reflected poorly on the firm and his attorney, Chris Gavin, yet Mr. Parsons was not monitored, reprimanded, or given a final warning. Accounting records will evidence Mr. Parsons' performance deficiency for the above-referenced matter.

On or about March/April 2016, I was assigned to work with Charles Torres, Esq (also Adam Brenner and Jeff Silberman). While working for attorney Charles Torres (young Hispanic male), I was disciplined and discharged. Respondent replaced me with a young Hispanic female secretary, who was assigned to work with Charles Torres, as the Emerging Companies Venture Capital Secretary (name not known). To my knowledge, this secretary did not have the legal experience, had to be taught to carry out the functions I was very experienced in and could do independently.

The difference in treatment by Cynthia Lopez and Lori Rulapaugh resulted in harassment. On March 23, 2015, they issued me a Performance Correction Action Plan. I challenged their treatment as unfair and opposed their treatment with higher level management. On April 21, 2016, I was issued a final warning. On April 28, 2016, I was terminated. The Administrators terminated me 30 days from the 1st corrective action and 7 days following their final written warning, therefore I believe they terminated me and then intentionally denied the favorable treatment they gave to younger and white employees.

Based on the above, I charge that Respondent discriminated against me in connection to my age and race, in violation of the ADEA, as amended and Title VII, as amended. I further allege that Respondent retaliated against me for opposing their discriminatory treatment, in violation of the ADEA, as amended and Title VII, as amended.